UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SAMUEL D MANNING,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>KING COUNTY DAJD, et al.,<br><br>　　　　　　　　Defendants. | Case No. C18-1568-JCC-MAT<br><br>REPORT AND RECOMMENDATION |

## I.　INTRODUCTION

Plaintiff is a state prisoner who is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action. He brings claims stemming from his pre-trial detention at the King County Jail. (*See* Dkt. 7 (Am. Compl.).) The defendants are King County, Captain Eric Urie, Corrections Officer Jeffrey Mendoza, and Corrections Officer Makesi Williams. Currently before the Court is defendants' motion for summary judgment. (Dkt. 40.) Plaintiff did not file an opposition.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that defendants' motion for summary judgement be GRANTED and this action be DISMISSED with prejudice.

REPORT AND RECOMMENDATION - 1

## II. BACKGROUND

A. Plaintiff's Housing in the Jail

During the events giving rise to this lawsuit, plaintiff was housed in "10 North," located on the 10th floor of the jail. (Dkt. 45 (Williams Decl.) at ¶ 4; Dkt. 46 (Mendoza Decl.) at ¶ 7; Dkt. 47 (Ramos Decl.) at ¶ 5.) The 10th floor has a control room known as the "core," and the Control Officer is responsible for controlling the movement on the floor. (Dkt. 48 (Young Decl.) at ¶ 4.) The 10th floor also has inmate cells, inmate visiting areas, and a common "day" room. (*Id.* at ¶ 5; Dkt. 47 at ¶ 5.) Officers Williams and Mendoza were both assigned to work on 10 North while plaintiff was housed there. (Dkt. 45 at ¶ 4; Dkt. 46 at ¶ 7.)

B. Allegations Regarding Officer Williams

In his verified amended complaint, plaintiff alleges the following against Officer Williams:

> In September [2018], C.O. Williams threatened to assault me when I "wasted his time" by trying to shower before court. He attempted to cause me to miss court and incite violence against me by calling me a "PC Punk" and a "Rapist." When I returned from court many of my legal papers were thrown away, my prescription pills were spilled on the floor and I received threats for being a "rapist" as Williams had informed them.

(Dkt. 7 at 3.)

Defendants submit the following evidence in response to these allegations. On one occasion in September 2018, Officer Williams received a call from the release counter that plaintiff was going to court at the Maleng Regional Justice Center ("RJC"). (Dkt. 45 at ¶ 11.) Plaintiff was a late addition to the court pull list, and there was minimal time for him to get ready for court. (*Id.*) Officer Williams informed plaintiff he had court, and he stated he was going to take a shower. (*Id.*) Officer Williams told plaintiff there was no time for a shower and he could potentially miss his court appearance. (*Id.*) Plaintiff responded, "I don't care," and proceeded to take a shower.

REPORT AND RECOMMENDATION - 2

(*Id.*) While plaintiff was showering, Officer Anderson arrived to escort plaintiff to the RJC transport. (*Id.* at ¶ 12.) Officer Williams informed Officer Anderson what had transpired. (*Id.*) Officer Anderson waited about 10 minutes and then left because he had other duties. (*Id.*) After plaintiff finished his shower and dressed, he came to the intercom and stated he was ready. (*Id.* at ¶ 13.) Officer Williams told plaintiff Officer Anderson had already left and he would probably miss his court date. (*Id.*) Plaintiff called Officer Williams a "fucking bitch" and stated he was not "shit without [his] badge." (*Id.*) Officer Williams told plaintiff to rack back[1], and plaintiff continued his verbal abuse while complying with the order. (*Id.*) Shortly after, Officer Anderson returned for plaintiff. (*Id.*) While walking out of the day room, plaintiff called Officer Williams a "punk ass bitch." (*Id.*) Officer Williams responded that officers should not have to wait for plaintiff, and if it were up to him, plaintiff would not go to court. (*Id.*) Plaintiff told Officer Williams to "shut the fuck up." (*Id.*) Officer Williams briefly lost his composure and replied, "You're a fucking punk, shut up and go to court." (*Id.*) Officer Anderson then escorted plaintiff out of 10 North. (*Id.* at ¶ 14.)

Officer Williams denies plaintiff's allegations that he threatened to assault plaintiff, attempted to cause plaintiff to miss court, incited violence against plaintiff, called plaintiff a "PC Punk" and a "rapist," removed legal papers from plaintiff's cell, and threw prescriptions on the floor. (*Id.* at ¶¶ 15, 16.)

C.      Allegations Against Officers Williams and Mendoza

Plaintiff further alleges:

Over the next months, C.O. Mendoza/Williams . . . would use any opportunity to harm me. They would often remove all the toilet paper from my room so I could not use the restroom for hours, take all the soap or toothpaste, anything they could, petty at times, searing at others, to "get back" at me. As time passed their behavior and threats became bolder. They would tell me things like if I wanted something,

---

[1] The term "rack back" means that an inmate is required to return to his or her cell. (Dkt. 46 at ¶ 11.)

REPORT AND RECOMMENDATION - 3

> I would have to "suck their dicks" for it.  They would also tell me that my time was coming and put their hands to their throats and smile calling me a "faggot" and a "rapist."  I complained to the Ombudsman and also filed a PREA report to go with countless grievances.  At no point was an investigator in to see me.  My grievances were returned with the same answer.  The Officers continued to grow bolder. Someone told them about my "confidential" PREA report and they (Mendoza/Williams) made it clear that I'd be "punished" for filing it.  I then filed a civil petition through the U.S. Courthouse.  The officers found out about it when going through my things.

(Dkt. 7 at 3.)  Officers Williams and Mendoza attest these allegations are false.  (Dkt. 45 at ¶¶ 20-24; Dkt. 46 at ¶¶ 27-32.)  Officer Williams also states that inmates are allowed to replenish soap and toothpaste at any time as long as the supplies are being used for their proper purpose.  (Dkt. 45 at ¶ 21.)

D.   Allegations Related to November 11, 2018 Incident

Plaintiff also alleges:

> Two weeks [after the officers learned he filed a federal lawsuit], on Sunday 11/11/18, C.O. Mendoza came into my room, trashed my things and then took me where there were no cameras, ([while] calling me a rapist) and beat me into the ground.  I was sent to the hospital with a concussion and dislocated wrist.  Subsequently, I was put into Ultra Security.  C.O. Williams incited violence against me through inmates and other guards and acted to "silence me" directly and indirectly.  C.O. Mendoza, acting under Williams' lead, did the same and actually hospitalized me.

(Dkt. 7 at 3.)

Defendants submit the following evidence in response.  On the morning of November 11, 2018, Officer Ramos asked Officer Mendoza to assist him with inspections on 10 North.  (Dkt. 46 at ¶ 15; Dkt. 47 at ¶ 6.)  Officer Ramos directed the inmates to exit their cells.  (Dkt. 46 at ¶ 16; Dkt. 47 at ¶ 6.)  While inspections were ongoing, plaintiff returned to his cell without authorization.  (Dkt. 46 at ¶ 16; Dkt. 47 at ¶ 6.)  Officer Mendoza asked him to exit his cell but plaintiff refused, stating, "I am not coming out you fucking faggots, you guys are a bunch of bitches."  (Dkt. 46 at

REPORT AND RECOMMENDATION - 4

¶ 16; *see* Dkt. 47 at ¶ 6.)  Officer Mendoza responded, "Why are you sexually harassing us, can we do our job?"  (Dkt. 46 at ¶ 17.)  Plaintiff then complied with Officer Mendoza's command to turn around and be handcuffed.  (*Id.* at ¶ 18; Dkt. 47 at ¶ 7.)  Officer Mendoza escorted plaintiff to the visiting area, which is a typical consequence for interfering with inspection.  (Dkt. 46 at ¶ 19; Dkt. 47 at ¶ 7; Dkt. 48 at ¶ 5.)  Officer Mendoza took off one handcuff and told plaintiff to sit in booth 2.  (Dkt. 46 at ¶ 19; Dkt. 48 at ¶ 5.)  Plaintiff then turned aggressively on Officer Mendoza, grabbed his shirt, and said, "You are a bitch, Mendoza."  (Dkt. 46 at ¶ 20; *see* Dkt. 48 at ¶ 5.)  Plaintiff started punching Officer Mendoza.  (Dkt. 46 at ¶ 21; Dkt. 48 at ¶ 5.)  Officer Young, who was the Control Officer that day, observed the incident and immediately called out a code signaling an officer in need of assistance.[2]  (Dkt. 48 at ¶¶ 3, 6.)  Plaintiff refused to comply with Officer Mendoza's commands to get on the floor and "stop resisting."  (Dkt. 46 at ¶ 21; Dkt. 48 at ¶ 7.)  Officer Mendoza defended himself by striking back, and they fell to the floor.  (Dkt. 46 at ¶ 21; Dkt. 48 at ¶ 7.)  Plaintiff continued to punch Officer Mendoza as the officer attempted to gain control.  (Dkt. 46 at ¶ 22.)  Officer Williams responded and handcuffed plaintiff.  (*Id.* at ¶ 23; Dkt. 48 at ¶ 8; Dkt. 45 at ¶ 28.)  Medical was called for plaintiff at 9:31 a.m., and the incident was cleared at 9:38 a.m.  (Dkt. 46 at ¶ 26; Dkt. 48 at ¶¶ 9, 10.)

Jail nursing staff saw plaintiff at approximately 11:00 a.m. that morning.  (Dkt. 42 (Sanders Decl.) at ¶ 6; *id.* at 12-18.)  Plaintiff denied losing consciousness, headache, dizziness, blurry vision, or missing/injured teeth.  (*Id.* at ¶ 6.)  He had superficial scratches on his face.  (*Id.*)  Medical staff offered him ice and ibuprofen.  (*Id.*)  Initially, he declined both, but later he requested ice.  (*Id.*)  At approximately 4:00 p.m., nursing staff saw him again.  (*Id.* at ¶ 7; *id.* at 20-24.)  He

---

[2] In a kite dated December 12, 2018, plaintiff asked for the name of the Control Officer that day and stated that this officer was "the only one who witnessed Mendoza's vicious assault."  (Dkt. 44 (Bacon Decl.) at 4 (emphasis in original).)

REPORT AND RECOMMENDATION - 5

complained of pain to his right wrist, which appeared swollen. (*Id.* at ¶ 7.) He was sent to Harborview Medical Center for an evaluation. (*Id.*) At Harborview, he was diagnosed with right arm pain. (*Id.* at ¶ 8; *id.* at 26-36.) He did not have a fractured or dislocated wrist. (*Id.* at ¶ 8; *id.* at 26-36; Dkt. 41 (Montgomery Decl.) at ¶ 9; *id.* at 21-22.) He was not diagnosed with a concussion, although it was deemed a possibility. (Dkt. 42 at ¶ 8; *id.* at 26-36; Dkt. 41 at ¶ 9; *id.* at 21-22.) The following day, plaintiff declined a neurological check by jail nursing staff, stating he was "doing okay." (Dkt. 42 at ¶ 9; *id.* at 38-46.)

E.  Allegations Against Captain Urie

Plaintiff alleges, "Captain Urie was made aware of all my grievances and PREA and did not conduct his duty as a supervisor, leaving me helpless. He did no investigating until after I was assaulted." (Dkt. 7 at 3.)

Defendants oppose these allegations with the following evidence. During the relevant period, Captain Urie was a Captain in Internal Affairs. (Dkt. 43 (Urie Decl.) at ¶ 2.) Part of his job was to determine whether complaints should be investigated by the shift commanders at the jail or whether the Internal Investigations Unit ("IIU") should investigate. (*Id.* at ¶ 3.) On October 5, 2018, he received notice that plaintiff had filed a PREA complaint against Officer Williams. (*Id.* at ¶ 4.) On October 9, 2018, he forwarded the complaint to the shift commander, Captain Troy Bacon, stating that it looked like a shift issue and asking Captain Bacon to let him know if IIU should be involved. (*Id.* at ¶ 5; *id.* at 5.) Captain Bacon did not ask for an IIU investigation. (*Id.* at ¶ 5.) Captain Urie never shared a copy of the PREA complaint with Officer Williams. (*Id.* at ¶ 10.)

Captain Urie also received a kite from plaintiff dated October 28, 2018, complaining about Officer Williams. (*Id.* at ¶ 6; *id.* at 8.) On October 31, 2018, he forwarded the kite to Captain

1 Bacon, asking that someone interview plaintiff. (*Id.* at ¶ 7; *id.* at 5.)  On November 20, 2018, Captain Urie received an email from Amy Calderwood at the Ombudsman's Office notifying him that plaintiff had sent the Ombudsman's Office a complaint alleging excessive force on November 11, 2018, and failure to follow up on a PREA report. (*Id.* at ¶ 8; *id.* at 10-11.)  Captain Urie promptly called the staff commanders and was assured that a shift sergeant had been in contact with plaintiff regarding his issues. (*Id.* at ¶ 9; *id.* at 10-11.)  Captain Urie was never assigned to investigate any complaint by plaintiff. (*Id.* at ¶ 11.)  In addition, he was not responsible for determining staff assignments in the jail. (*Id.* at ¶ 12.)

F.  <u>Allegations Against King County</u>

With respect to King County, plaintiff's only allegation is that "King County is responsible in that I am in [its] custody and despite every available protection being used, I was savagely harassed and beaten." (Dkt. 7 at 3.)

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by presenting evidence that negates an essential element of the nonmoving party's case, or by establishing that the nonmovant lacks the quantum evidence needed to satisfy its burden at trial.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party bears the burden at trial, it can meet its initial burden by presenting evidence sufficient to demonstrate that no reasonable trier of fact could find for the nonmoving party; the evidence presented must establish beyond controversy every essential element of the claim. *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute. *Id.* at 252. A verified complaint, like plaintiff's, "may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence." *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (internal quotations omitted); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). But allegations that are based merely on the plaintiff's belief are insufficient to oppose summary judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

In ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 248.

/ / /

## IV. DISCUSSION

To sustain a § 1983 civil rights claim, plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). For the reasons discussed below, the Court concludes that defendants are entitled to summary judgment on all of plaintiff's claims against them.

### A. King County

Plaintiff seeks to hold King County liable because he was in county custody during the events alleged in his complaint. (Dkt. 7 at 3.) A local government unit or municipality can be sued as a "person" under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id*. A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *Bd. of the Cnty. Comm'rs of Bryant Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694).

Plaintiff's amended complaint fails to identify any custom or policy. (*See* Dkt. 7.) He subsequently wrote a letter to the Court stating he wished to identify the "excessive force policy." (Dkt. 37.) As defendants argue, there is no evidence in the record that any "excessive force policy" caused the alleged incident on November 11, 2018. Accordingly, any claims against King County should be dismissed.

///

B.   Verbal Threats

Plaintiff alleges Officers Williams and Mendoza threatened to assault him, called him offensive names, told him to "suck their dicks," and told him his "time was coming" while making threatening gestures. (Dkt. 7 at 3.) Such allegations of verbal harassment or abuse do not state a constitutional deprivation under § 1983. *See, e.g.*, *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (prison officials' abusive language towards Muslim inmates insufficient to establish equal protection violation); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *McCollum v. California*, 610 F. Supp. 2d 1053, 1060 (N.D. Cal. 2009); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (disrespectful and assaultive comments by prison guard not enough to implicate Eighth Amendment); *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) (prisoner does not have cause of action under § 1983 for being called obscene name by prison employee). Defendants are entitled to summary judgment on these claims.

C.   Failure to Protect

Plaintiff alleges Officer Williams "incited violence" against him by calling him a "PC punk" once and a "rapist" multiple times in front of other guards and inmates. (Dkt. 7 at 3.) Plaintiff claims inmates, whom he does not identify, "threatened" him because Officer Williams said he was a rapist. (*Id.*) Plaintiff similarly alleges Officer Mendoza called him "rapist" multiple times. (*Id.*) As explained above, the mere allegation that defendants called plaintiff a "rapist" is insufficient to state a § 1983 claim; however, the Ninth Circuit has held that allegations that prison officials called a prisoner a "snitch" in the presence of other inmates may violate an inmate's right to be free from harm because of the risk created by being identified as a snitch in jail. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989). While labeling an inmate a

"snitch" and a "rapist" are not equivalent, the Court concludes that such allegations should be analyzed under the same standard.

A pretrial detainee alleging a failure to protect claim must establish that the defendant was deliberately indifferent under the following standard:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc). Even assuming the truth of plaintiff's allegations, however, there is insufficient evidence to conclude that labeling him a rapist put him at substantial risk of suffering serious harm while at the Jail. Indeed, his only claim of injury is that unidentified inmates "threatened" him. Such a vague allegation, unsupported by additional evidence, is insufficient to create a genuine issue of material fact regarding whether the officers violated his constitutional rights. Plaintiff's failure to protect claims should be dismissed with prejudice.

D.      Conditions of Confinement

Plaintiff alleges Officers Williams and Mendoza "would often remove all the toilet paper from my room so I could not use the restroom for hours, take all the soap or toothpaste." (Dkt. 7 at 3.) The Fourteenth Amendment's due process clause protects pretrial detainees from punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of

law."). The test for identifying unconstitutional punishment at the pretrial stage of a criminal proceeding requires a court to examine "whether there was an express intent to punish, or 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purposes assigned [to it].'" *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 538). "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." *Id.* at 1029. Further, "to constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Id.* at 1030.

The Constitution "does not mandate comfortable prisons[.]" *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Conditions of confinement "may be, and often are, restrictive and harsh[.]" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Rhodes*, 452 U.S. at 347). However, an institution must provide "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986) (cited source omitted), *abrogated on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). When assessing a conditions of confinement claim, the Court should consider the amount of time an inmate is subjected to the allegedly unconstitutional conditions. *See Hutto v. Finney*, 437 U.S. 678, 685-87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *Hearns v. Terhune*, 413 F.3d 1036, 1042-43 (9th Cir. 2005) ("The circumstances, nature, and duration of a deprivation of [] necessities must be considered in determining whether a constitutional violation has occurred.") (quoting

REPORT AND RECOMMENDATION - 12

*Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).

Here, plaintiff's bare allegations that he did not have access to toilet paper for "hours" and that Officers Williams and Mendoza took away his soap and toothpaste for unidentified lengths of time are insufficient to rise to the level of unconstitutional punishment. *See Demery*, 378 F.3d at 1030 ("to constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement"). Summary judgment should be granted in defendants' favor on these claims.

E.  Retaliation

Plaintiff alleges Officers Williams and Mendoza "made clear" he would be punished for filing a PREA complaint. (Dkt. 7 at 3.) He also suggests that Officer Mendoza assaulted him in retaliation for initiating a federal civil rights lawsuit, noting that the assault occurred two weeks after the officers learned of the lawsuit. (*Id.*) The First Amendment protects prisoners' right to file grievances and pursue civil rights litigation in federal court without retaliation. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Silva v. DiVittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). "The prisoner must show that the type of activity in which he was engaged was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest." *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1124 (N.D. Cal. 2015) (citing *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997)); *see*

*also Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (plaintiff bears burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains). Additionally, "a plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Absent direct evidence, retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). Circumstantial evidence of motive that can defeat summary judgment usually includes: "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." *McCollum v. Cal. Dept. of Corrections & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (internal quotation marks and citation omitted). However, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904-05 (9th Cir. 2014) (affirming grant of summary judgment where no evidence that defendants knew of plaintiff's prior lawsuit or that defendants' disparaging remarks were made in reference to prior lawsuit).

Plaintiff's vague claim that Officers Williams and Mendoza "made clear" he would be punished for filing a PREA complaint is insufficient to state a retaliation claim. Similarly, his attempt to establish Officer Mendoza assaulted him in retaliation for filing a federal lawsuit fails. The only basis for this claim is that the alleged assault occurred two weeks after the officers allegedly learned of the lawsuit. Plaintiff's claim that Officer Mendoza retaliated against him for filing a lawsuit is based on mere speculation. Defendants are entitled to summary judgment on these claims.

///

F.   Excessive Force

Plaintiff alleges that on November 11, 2018, Officer Mendoza came into his cell, "trashed" his things, took him to a location where there were no cameras, and beat him "into the ground." (Dkt. 7 at 3.) Plaintiff claims he was sent to the hospital with a concussion and dislocated wrist. (*Id.*) As detailed above, defendants have presented evidence that plaintiff initiated the physical altercation, punched Officer Mendoza repeatedly, and refused to comply with Officer Mendoza's verbal commands. This evidence is corroborated by Officer Young, whom plaintiff identified as the only other officer who witnessed the incident.

Defendants have also presented medical evidence that contradicts plaintiff's alleged injuries. Harborview doctors diagnosed him with right arm pain; his wrist was not fractured or dislocated. They also declined to diagnose a concussion, although they deemed it a possibility. Given the medical evidence, the Court will not credit plaintiff's alleged injuries. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (holding that plaintiff's deposition testimony failed to create a genuine issue of material fact for trial because the "testimony flatly contradicts both her prior sworn statements and the medical evidence").

The Fourteenth Amendment's Due Process Clause protects pretrial detainees from excessive force. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015). To prevail on such a claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'" without regard to the officers' underlying intent or

motivation. *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court must weigh the circumstances from the viewpoint of a reasonable officer at the scene and "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotation and citation omitted). In assessing reasonableness, the Court may consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Viewing the evidence in the light most favorable to plaintiff and from the perspective of a reasonable officer at the scene, the Court concludes no reasonable jury could find that Officer Mendoza's use of force was objectively unreasonable. Officer Mendoza used a reasonable amount of force to defend himself against plaintiff's physical attack; he matched punches with punches. Plaintiff was not seriously injured and was "doing okay" the next day. Officer Mendoza used verbal commands in an attempt to deescalate the situation, but plaintiff refused to comply. Plaintiff actively resisted Officer Mendoza's efforts to subdue him. Given these facts, summary judgment should be granted in Officer Mendoza's favor on plaintiff's excessive force claim.

G.     Supervisor Liability

Plaintiff alleges Captain Urie knew of his grievances against Officers Williams and Mendoza and "did not conduct his duty as a supervisor." (Dkt. 7 at 3.) Plaintiff also faults Captain Urie for failing to investigate his complaints until after the November 11, 2018 incident. (*Id.*) Captain Urie presents evidence that he promptly reviewed and referred each of plaintiff's

complaints to jail staff. Captain Urie also was never assigned to personally investigate any of plaintiff's complaints and was not responsible for determining staff assignments in the jail.

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). The Ninth Circuit has explained:

> A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Redman*, 942 F.2d at 1447 (internal quotation marks omitted).
>
> "The requisite causal connection can be established . . . by setting in motion a series of acts by others," *id.* (alteration in original; internal quotation marks omitted), or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury," *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted).

*Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (alterations in *Starr*).

Viewing the evidence in plaintiff's favor, no reasonable jury could conclude that Captain Urie was personally involved in any of the alleged constitutional violations by Officers Williams and Mendoza. Furthermore, there is no evidence upon which to conclude that Captain Urie acted

REPORT AND RECOMMENDATION - 17

wrongfully or breached a duty owed to plaintiff.  Captain Urie promptly responded when he learned of each complaint and referred the matters to Captain Bacon.  Captain Urie did not set in motion any acts by others causing plaintiff injury or knowingly refuse to terminate the other defendants' alleged actions.  Accordingly, Captain Urie is entitled to summary judgment on the claims against him.

### V.   CONCLUSION

The Court recommends that defendants' motion for summary judgment (Dkt. 40) be GRANTED and that this action be DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 27, 2019**.

Dated this 5th day of December, 2019.

_____
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18